IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| James Komaniecki, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 21-cv-2492 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| Illinois Tool Works, Inc. Retirement ) | |
| Accumulation Plan, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

James Komaniecki ("Komaniecki") filed this action under §§ 502(a)(1)(B) and (a)(3) of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., against the administrator of his former employer's defined benefit pension plan ("the plan"). *See* Compl. 1–2, ECF No. 1. His claims stem from the plan's determination that he is ineligible for pension benefits because he did not accumulate five years of qualifying vesting service before he became disabled in 2004. *See* Compl. ¶¶ 5–16; Pl.'s Resp. to Def.'s Stmt. Material Facts ("RSOF") ¶¶ 22–26, 49–52, ECF No. 41. The plan moves for summary judgment, arguing that the plain language of the applicable plan document[1] supports its decision to deny benefits and that Komaniecki is not entitled to equitable relief under § 502(a)(3) of ERISA. *See* Def.'s Mem. Supp. Mot. Summ. J. 3–14, ECF No. 37. Komaniecki "admits that he had not accrued five years of vesting service when he began receiving disability benefits" in 2004. RSOF ¶ 25. He contends, however, that genuine disputes of material fact exist concerning his claim for equitable relief. *See* Pl.'s Mem. Opp'n to Def.'s Mot. Summ. J. ("Resp.") 3–9, ECF No. 42. Specifically,

---

1 As exhibit 1 to its fact statement, defendant filed a collection of documents that it refers to as the administrative record. *See* ECF Nos. 36-2, 36-3, 36-4. The administrative record has been Bates-numbered using the format "KOMANIECKI_AR[page number]." *See id.* Like the parties, the court uses the format "A.R. [page number]" when citing this exhibit. The summary judgment record contains the following plan documents: (1) ITW Retirement Accumulation Plan (As Amended and Restated Effective as of Jan. 1, 2001) ("2001 plan"), A.R. 205–338; (2) ITW Retirement Accumulation Plan Summary Plan Description (distributed May 2002) ("2002 SPD"), A.R. 173–204; (3) ITW Retirement Accumulation Plan Summary Plan Description (distributed 2010) ("2010 SPD"), A.R. 144–72; and (4) ITW Retirement Accumulation Plan (As Amended and Restated Effective as of Jan. 1, 2016) ("2016 plan"), A.R. 15–119.

he argues that defendant's "silence in some instances, and its misleading communications in others, gave him reason to believe that he was eligible to receive a pension." Resp. 3. For the following reasons, the court grants defendant's motion for summary judgment.

## I. Summary Judgment Standard and Fact Statements

### A. Motions for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To show that a fact cannot be or is genuinely disputed, a party may cite "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); *see also* Fed. R. Civ. P. 56(c); N.D. Ill. LR 56.1. A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At summary judgment, "facts must be viewed in the light most favorable to," and all reasonable inferences from the evidence must be drawn in favor of, the nonmoving party—but "only if there is a genuine dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quotation omitted).

After "a properly supported motion for summary judgment is made, the adverse party must" go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted). Thus, summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

### B. Local Rule 56.1

Each party argues that the other has violated Local Rule ("LR") 56.1, which sets out formal requirements for summary judgment motions in this court. *See also* LR 56.2 (requirements when moving for summary judgment against a party without a lawyer). Under Local Rule 56.1, the party moving for summary judgment must file a "supporting memorandum

of law" and "a statement of material facts." LR 56.1(a)(1), (2). In response, the nonmoving party must file a memorandum of law (LR 56.1(b)(1)) and a response to the movant's fact statement (LR 56.1(b)(2)). The summary judgment opponent may also file a "statement of additional material facts." LR 56.1(b)(3).

Fact statements must "consist of concise numbered paragraphs" and each paragraph must be "supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(1)–(2). The following requirements apply to a response to a fact statement and a response to a statement of additional facts:

> (2) Content. Each [paragraph of the] response must admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact. If the response admits in part and disputes in part the asserted fact, it must specify which part of the asserted fact is admitted and which part is disputed. A response may not set forth any new facts, meaning facts that are not fairly responsive to the asserted fact to which the response is made. A response may not assert legal arguments except to make an objection, including objections based on admissibility, materiality, or absence of evidentiary support. Motions to strike all or portions of an opposing party's LR 56.1 submission are disfavored. If a party contends that its opponent has included objectionable or immaterial evidence or argument in a LR 56.1 submission, the party's argument that the offending material should not be considered should be included in its response or reply brief. In the event that the objection is overruled, the failure to admit or dispute an asserted fact may constitute a waiver.
>
> (3) Citations. To dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material.

LR 56.1(e)(2)–(3).

Local Rule 56.1 assists "the court by organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Markham v. White*, 172 F.3d 486, 490 (7th Cir. 1999). It also imposes "some discipline on the pretrial process" and facilitates "an early end to cases that do not require a full trial." *Id.* "Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law," the Seventh Circuit has "repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the

clarity of summary judgment filings." *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) (citing *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817–18 (7th Cir. 2004)). Whether to enforce LR 56.1 strictly or overlook transgressions is a discretionary decision. *Id.* at 887 (citing *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995)).

### C. Local Rule 56.1 Violations and Objections to Fact Statements

The parties' legal memoranda, fact statements, and responses violate Local Rule 56.1 in several ways. Starting with the legal memoranda, both parties sometimes cite the LR 56.1(e) fact statements, but they also sometimes cite directly to summary judgment exhibits. *E.g.*, Resp. 4; Def.'s Reply Supp. Mot. Summ. J. ("Reply") 3, 10, ECF No. 50. Although Komaniecki cites the Local Rule 56.1 fact statements in the "Facts" section of his response memorandum (*see* Resp. 3–5), he makes factual assertions elsewhere without an accompanying citation. *See, e.g.*, Resp. 1–2, 5, 6–7, 9. Local Rule 56.1(g) prohibits direct citations to summary judgment evidence in legal memoranda: "When addressing facts," each memorandum of law "must cite directly to specific paragraphs in the LR 56.1 statements or responses." LR 56.1(g). The court exercises its discretion to enforce Local Rule 56.1(g) and disregards all direct citations to summary judgment evidence in the parties' legal memoranda. *See, e.g.*, *Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 442 (7th Cir. 2011); *Boyd v. City of Chicago*, 2023 WL 3627708, at *4 (N.D. Ill. May 24, 2023) (citations omitted). The court also disregards all factual assertions that appear in the parties' legal memoranda but not in the LR 56.1 fact statements. *See Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 397–98 (7th Cir. 2012); *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 808 (7th Cir. 2005); *see also Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1316–17 (7th Cir. 1995).

As for the parties' fact statements and responses, the court deems undisputed paragraphs 35–37, 41, 43, 45, and 46 of the plan's fact statement because, although Komaniecki disputes these paragraphs, he cites no evidence in his response. *See* RSOF ¶¶ 35–37, 41, 43, 45, 46. As stated by the Seventh Circuit in affirming a decision to deem undisputed paragraphs of a fact statement because no admissible evidence was cited in response, "A litigant who denies a

4

material fact is required to provide the admissible evidence that supports his denial in a clear, concise, and obvious fashion, for quick reference of the court." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015); *see also, e.g.*, *Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 710 (7th Cir. 2015).

The plan also objects that several paragraphs of Komaniecki's response to its statement of facts contain improper legal argument and additional facts not fairly responsive to the paragraph. *See* Reply 2–4. Although the plan raised this objection, the court has reviewed both parties' fact statements and responses in order to ensure that Local Rule 56.1 is enforced evenhandedly. Many paragraphs of the responses filed by both parties contain improper argument and additional facts. *See* RSOF ¶¶ 6, 15, 23–26, 31, 33, 39, 50; Def.'s Resp. to Pl.'s Stmt. Add'l Facts ("RSAF") ¶¶ 4, 5, ECF No. 49. *"*Reference to legal arguments to support a denial of a material fact is not contemplated by [Local Rule 56.1]." *Curtis*, 807 F.3d at 219. Furthermore, additional facts referenced in response to a fact statement must appear in the nonmoving party's Local Rule 56.1(b)(3) statement of additional facts. *See Ammons*, 368 F.3d at 817. In the exercise of the court's discretion, the improper arguments[2] will not be considered, and Komaniecki's additional facts will be considered only to the extent that they appear in his LR 56.1(b)(3) statement of additional facts.

In a somewhat related vein, as the plan points out, Komaniecki cites several pages of his deposition transcript in response to the plan's fact statement, but the cited pages have not been made a part of the record. *See, e.g.*, RSOF ¶¶ 6 (citing Deposition of J. Komaniecki ("Komaniecki Dep. I") 34:21–35:23, Def.'s Stmt. Material Facts Ex. 5, ECF No. 36-8). This occurred because the plan filed excerpts of Komaniecki's deposition as exhibit five to its fact statement and additional excerpts as exhibit one to its response to Komaniecki's fact statement. ECF No. 36-8; Deposition of J. Komaniecki ("Komaniecki Dep. II"), RSAF Ex. 1, ECF No. 49-

---

2   Komaniecki quotes the definition of a "participant" in 29 U.S.C. § 1002(7) in response to paragraph 15 of the plan's fact statement. *See* RSOF ¶ 15. Komaniecki does not explain how he believes this definition affects the analysis. *See id.*

1. Komaniecki has not supplemented the record with the pages of his deposition transcript he has cited, as LR 56.1(b)(3) required him to do. Because the cited portions of Komaniecki's deposition are not in the record, the court has no way to verify the citations or determine whether they support the parties' factual positions. The court therefore disregards Komaniecki's citations to pages of his deposition not in the record.

Next, when responding to each other's fact statements, both parties sometimes cross-reference other paragraphs of the fact statements and responses. *See* RSOF ¶¶ 7, 31, 33, 36, 44, 52; RSAF ¶¶ 4, 5, 8, 9, 10. A party may not respond to a paragraph of a fact statement by citing to another fact statement; doing this "saves counsel time but offloads on the court the burden of identifying what is factually disputed and whether the dispute is material." *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1019 (N.D. Ill. 2018) (citing *Schlessinger v. Chi. Hous. Auth.*, 130 F. Supp. 3d 1226, 1228 (N.D. Ill. 2015)). The court disregards the cross-references in Komaniecki's response to the plan's fact statement and in the plan's response to Komaniecki's statement of additional facts.

The final issues to be resolved are the parties' objections. The plan objects to the materiality of the facts in paragraphs 4, 7, and 11 of Komaniecki's statement of additional facts. RSAF ¶¶ 4, 7, 11. To the extent necessary, the court resolves these objections below when discussing the specific factual issues referenced in these paragraphs. *See, e.g.*, *Rivera*, 319 F. Supp. 3d at 1020.

Komaniecki objects that the cited evidence does not support portions of paragraphs 24 and 35 of the plan's fact statement. RSOF ¶¶ 24, 35. The objected-to sentence of paragraph 35 reads, "In response, instead of sending Komaniecki the 2001 Plan Document, the Plan *inadvertently* sent Komaniecki a copy of the then-current Plan document that was 'amended and restated effective as of January 1, 2016.'" RSOF ¶ 35 (emphasis added) (citing A.R. 119). The page of the record cited in support of this sentence is page 1 of the 2016 plan document, which contains sections 1.1 through 1.3 of the 2016 plan. *See* A.R. 19. Nothing on the face of the cited page suggests that the 2016 plan was sent inadvertently, and drawing such an inference would be

6

unfavorable to Komaniecki and therefore improper at summary judgment. *See id*. The partial objection to paragraph 35 is sustained.

The other objected-to paragraph of the plan's fact statement reads:

> 24. Under the 2001 Plan Document, participants who are vested *before* they "incur[ ] a Disability," meaning participants who have "completed five years of Vesting Service" before that time, are eligible to continue accruing vesting service while they are disabled. (A.R._232.) Participants who are *not* vested before they "incur[ ] a disability" do not continue to accrue vesting service while they are disabled. (*Id*.)

RSOF ¶ 24 (alterations and emphasis in original).

The first sentence accurately paraphrases the cited page of the 2001 plan document. RSOF ¶ 24; *see* A.R. 232. The second sentence does not appear in the plan document, however. *See* A.R. 232. The court need not and does not resolve this objection, however, because, as explained *infra*, there is no dispute that Komaniecki does not meet the 2001 plan's eligibility criteria.

## II. Facts at Summary Judgment

ITW hired Komaniecki as a senior project engineer in 2000. RSOF ¶ 3; RSAF ¶ 1. He took a disability-related leave of absence beginning in August 2003. RSOF ¶ 4. ITW's insurer subsequently approved his application for long-term disability benefits effective February 22, 2004. *See* RSOF ¶¶ 5–9; RSAF ¶ 3. Komaniecki subsequently applied for and obtained social security disability benefits. RSOF ¶ 10.

Before Komaniecki was approved for long-term disability benefits in 2004, an ITW human resources representative told him that he would be eligible for retirement benefits. RSOF ¶ 6. A 2004 document submitted to ITW's long-term disability insurer can be seen as corroborating these oral statements. The document, titled Income Protection Claim, is a form asking a series of questions, including whether Komaniecki was eligible for a pension plan. Def.'s Stmt. Material Facts Ex. 2 at 33–34, ECF No. 36-5. The box next to "yes" is checked, and an ITW human resources representative signed the form. *Id*. at 33.

Unfortunately for plaintiff, the parties now agree that Komaniecki was ineligible for benefits under the 2001 plan document and the 2002 summary plan description ("SPD") in effect in 2004. *See* RSOF ¶¶ 14–26. The 2001 plan document in effect required five years of qualifying vesting service for an employee to be eligible for benefits. RSOF ¶ 23 (citing A.R. 233). Employees who become disabled after accumulating five years' of vesting service continue to accumulate vesting service credit (RSOF ¶ 24), but, for employees with fewer than five years' vesting service, eligibility terminates upon a "severance from service," which the plan defines as:

> "a termination of service" with ITW, occurring "on the earlier of":
>
> (1) The date upon which an Employee quits, retires, is discharged, disabled or dies, provided the Employee does not return to service with [ITW] prior to the first anniversary of any such termination. . . .
>
> [or]
>
> (3) With respect to a Leave of Absence, the first day of such Leave, provided the Employee does not retire on or before the last day of such Leave or is not subsequently determined to have been under a Disability as of the first day of such Leave, or does not return to service with the Company prior to the first anniversary on such date.

RSOF ¶ 16 (brackets and ellipses in original) (quoting 2001 plan § 3.7(a), A.R. 224).

Komaniecki does not dispute that under this definition, he "ceased to be a participant in the Plan at the earliest by August 21, 2003, . . . and at the latest by February 22, 2004, the date upon which the [long-term disability] Plan considered him 'disabled.'" RSOF ¶ 21. Accordingly, the plan later credited Komaniecki with 4.02 years of vesting service credit. RSOF ¶¶ 21–22.

The dispute here centers on a subsequent plan that is not in the record. The record contains a 2010 SPD for this plan, which the parties agree accurately summarizes the plan's terms. *See* RSOF ¶ 40; A.R. 144–72. This plan lowered the five-year vesting service requirement to three years. *See* A.R. 164. By its terms, the 2010 SPD and the three-year vesting rule "applies to employees hired before January 1, 2007" but excludes employees "who were not eligible employees in a participating business unit as of December 31, 2006." RSOF ¶ 43 (citing

8

A.R. 146). The 2010 SPD states that for employees who "left the Company before January 1, 2007, the terms of the prior Plan in which [they] participated (as in effect on the day [their] employment ended) continue to apply." RSOF ¶ 43 (quoting A.R. 146).

For reasons undisclosed by the record, beginning in 2010 ITW's employee website for Komaniecki included a link to the 2010 SPD. RSOF ¶ 41; RSAF ¶¶ 6–7. The ITW website also stated that Komaniecki had an annual salary of one dollar, though it is undisputed that he never received this salary. *See* RSAF ¶ 7; Affidavit of J. Komaniecki ("Komaniecki Aff.") ¶ 2, ECF No. 43; *see also* Komaniecki Dep. II at 51:10–12 (admitting that plaintiff did not recall being paid a salary after 2004). Komaniecki states that he relied on these documents as indicating that he was subject to a three-year vesting period. *See* RSAF ¶ 6; RSOF ¶¶ 41–42. The parties cite no evidence shedding light on how or why these documents were posted on ITW's website. *See* RSAF ¶¶ 6–7; RSOF ¶ 41.

On April 3, 2019, Komaniecki called ITW's pension benefits service center to inquire about his upcoming eligibility for benefits. *See* RSOF ¶ 28. The court has listened to the recordings of this call and the subsequent call with the same representative. Despite his later statements that he relied on the documents posted on ITW's website, Komaniecki told the representative that he had been receiving disability benefits for many years and that he did not know whether he was eligible for benefits. RSOF ¶ 29 (undisputed fact). The plan representative who spoke with Komaniecki on April 3, 2019, informed him that she did not believe he was eligible for pension benefits because he had not accumulated five years' vesting service when he began his long-term disability leave. RSOF ¶ 30. The representative offered to look into the matter further and "just make sure that our records are accurate on that." RSOF ¶ 30 (quoting Tr. of Phone Call between J. Komaniecki and ITW Pension Service Center, Apr. 3, 2019, at 1:24, Def.'s Stmt. Material Facts Ex. 6, ECF No. 36-9). The representative followed up with Komaniecki on April 12, 2019, and confirmed that he was ineligible for a pension benefit. RSOF ¶ 31. Komaniecki requested a written confirmation and explanation, which was sent to him by letter dated April 15, 2019. RSOF ¶¶ 32–33. Consistent with the representative's

9

explanations by phone, the letter stated that Komaniecki was ineligible for benefits because he was "not vested at [his] one year period on [sic] leave." RSOF ¶ 33 (quoting Letter from ITW Pension Service Center to J. Komaniecki 1 (Apr. 15, 2019), A.R. 4).

Komaniecki wrote the plan a letter dated August 9, 2019, requesting "copies of the relevant plan documents which relate to my period of employment with ITW." RSOF ¶ 34 (quoting Letter from J. Komaniecki to ITW Pension Plan Administrator 1 (Aug. 9, 2019), A.R. 5). The letter stated that Komaniecki's period of employment was "14-Feb-2000 thru 2004." Letter from J. Komaniecki to ITW Pension Plan Administrator 1 (Aug. 9, 2019), A.R. 5. The plan did not send Komaniecki the 2001 plan document in response. RSOF ¶ 35. Instead, it sent him the then-current 2016 plan document, which had a three-year vesting period. *See* RSOF ¶ 35 (no support for claim that 2016 plan document was "inadvertently" sent). Like the 2010 SPD, the 2016 plan document provides that "a former Participant's eligibility for benefits, and the amount of benefits payable to or on his or her behalf, shall be determined in accordance with the provisions of the Plan in effect at the time of the former Participant's termination of employment." RSOF ¶ 37 (quoting 2016 plan § 1.1, A.R. 19). On September 19, 2019, Komaniecki requested copies of "the specific plan documents from 2003 and 2004 only, that may be applicable to [him] specifically." RSOF ¶ 38 (citing Letter from J. Komaniecki to ITW Pension Plan Administrator 1 (Sept. 19, 2019), A.R. 120). Komaniecki asserts that he made this request to determine whether his benefit calculations might be different under the version of the plan documents in effect in 2004, but he relies on a portion of his deposition transcript not in the record. *See* RSOF ¶ 38 (citing Komaniecki Dep. 89:9–90:15). The plan sent Komaniecki the 2001 plan document, with a five-year vesting period, on October 28, 2019. RSOF 39.

Komaniecki then submitted a claim for benefits based on the 2010 SPD and argued that he had accumulated three years of vesting credit. RSOF ¶¶ 40, 42. The plan determined that Komaniecki is ineligible for pension benefits because he completed 4.02 years of vesting service, and the 2001 document, found by the plan to be controlling, required five years of service. *See* RSOF ¶¶ 22–25, 45–46; 2001 plan § 4.4(a), A.R. 233. Komaniecki appealed the plan's decision

10

in December 2019. RSOF ¶ 47. He stated in his appeal letter to the plan that he was "'in agreement with [the Plan's] recitation concerning [his] dates of employment' and stated that he was appealing based on the 3-year vesting schedule in the 2010 SPD." RSOF ¶ 48 (alterations in original) (quoting Letter from M. DeBofsky to ITW Appeals Committee 1 (Dec. 3, 2019), A.R. 136). The plan denied Komaniecki's appeal on March 25, 2021. RSOF ¶¶ 50–51. The plan reiterated that Komaniecki had accumulated 4.02 years of vesting credit for his period of employment between 2000 and 2004. RSOF ¶ 49. In rejecting Komaniecki's appeal, the plan stated regarding the 2010 SPD:

> The Plan document supersedes the summary plan description in all respects. See page 1 of the SPD. As noted in section 1.1 of the Plan, a former participant's eligibility for benefits is determined in accordance with the provisions of the Plan in effect at the time of the participant's termination of employment. Page 1 of the SPD states that if a participant left the company before January 1, 2007, the terms of the prior plan in which he or she participated (as in effect on the day employment ended) continue to apply. The Plan document that was in effect at such time clearly stipulates a five year vesting requirement. The Plan document that was effective at the time is attached hereto.

RSOF ¶ 50 (quoting Letter from K. Dunmore to M. DeBofsky 2 (June 8, 2022), A.R. 124).

After his appeal was denied, Komaniecki commenced this lawsuit against the plan. Compl., ECF No. 1. The plan moved to dismiss his complaint for failure to state a claim, but the court denied this motion because disputed plan documents were attached to the motion but not referenced in the complaint. See Fed. R. Civ. P. 12(d), Order at 3–5 (N.D. Ill. Mar. 14, 2022), ECF No. 20. Following discovery, the plan filed its pending motion for summary judgment.

### III. Analysis

Komaniecki pleads two ERISA claims in his complaint. See Compl. ¶¶ 15–16. The first arises under § 502(a)(1)(B) of ERISA, which authorizes a participant or beneficiary of a plan governed by ERISA to sue the plan administrator "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Claims under § 502(a)(1)(B) of ERISA are sometimes referred to as claims for benefits due. *E.g.*, *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 910 (7th Cir. 2013). In the alternative to his claim for

11

benefits due, Komaniecki seeks equitable reformation of the plan under § 502(a)(3) of ERISA. Compl. ¶ 16; 29 U.S.C. § 1132(a)(3). The plan moves for summary judgment on both claims.

### A. Claim for Benefits Due

As is common, the plan documents at issue here vest discretion in the plan administrator to determine eligibility for benefits. RSOF ¶¶ 1, 27 (undisputed facts); 2001 plan §§ 7.3(c)–(f), 7.8, A.R. 253, 255; 2016 plan §§ 7.3(c)–(e),7.10, A.R. 58–60, 79; *see also Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 112 (2013) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111–12 (1989)). "Courts ordinarily review determinations by such plans only for abuse of discretion." *Heimeshoff,* 571 US. at 112 (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115–16 (2008)); *see Firestone*, 489 U.S. at 113–15 (tracing this standard to the law of trusts and the standard for reviewing trustees' discretionary decisions). The deference afforded to a plan administrator "promotes efficiency by encouraging resolution of benefits disputes through internal administrative proceedings rather than costly litigation. It also promotes predictability, as an employer can rely on the expertise of the plan administrator rather than worry about unexpected and inaccurate plan interpretations that might result from *de novo* judicial review." *Conkright v. Frommert*, 559 U.S. 506, 517 (2010). As the Seventh Circuit has explained,

> A plan administrator's decision survives arbitrary-and-capricious review if (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem.
>
> This deference likewise extends to matters of contract interpretation. Where policy terms are ambiguous, we may not "set aside a denial of benefits based on any reasonable interpretation of the plan," even if we would be inclined to reach a different result on plenary review. . . . That's not to say this deference is simply a rubber stamp; if the administrator's construction "defies [the] plan's plain language" or is otherwise patently unreasonable, its decision has "fail[ed] the arbitrary-and-capricious standard.

*Ten Pas v. Lincoln Nat'l Life Ins. Co.*, 31 F.4th 541, 545–46 (7th Cir. 2022) (internal quotations and citations omitted).

Here, the plan administrator determined that Komaniecki was ineligible for retirement benefits because (i) the 2001 plan document was the governing document; (ii) the 2001 plan document required five years' of vesting credit for an employee to be eligible for retirement benefits; and (iii) Komaniecki had accumulated 4.02 years of vesting credit. *See* RSOF ¶¶ 45–46, 49–51 (citing initial denial letter and letter denying appeal, A.R. 123–24, 133). In his summary judgment briefing, Komaniecki develops no argument that the plan administrator's decision was arbitrary, capricious, or otherwise incorrect. *See* Resp. 5–9. Rather, he agrees with each premise of this analysis. *See* RSOF ¶¶ 13–26. He does not dispute that when he "began his long-term disability leave on February 22, 2004, he had accrued 4.02 years of vesting service under the [2001] Plan, due to his 4.02 years of employment with ITW between February 14, 2000[,] and the beginning of his long-term disability leave on February 22, 2004." RSOF ¶ 13. Komaniecki also does not dispute that:

> Under the 2001 Plan Document's definition of Severance from Service, Komaniecki ceased to be a participant in the Plan at the earliest by August 21, 2003, the "first day" of his leave of absence, and at the latest by February 22, 2004, the date upon which the LTD Plan considered him "disabled."

RSOF¶ 22 (citing A.R. 224).

"[A] party will be deemed to have waived a claim for failing to cite both legal authority and supporting factual evidence." *De v. City of Chicago*, 912 F. Supp. 2d 709, 733–34 (N.D. Ill. 2012) (citing *Gross v. Town of Cicero*, 619 F.3d 697, 708 (7th Cir. 2010); other citation omitted). Komaniecki has waived his claims for benefits due at summary judgment by failing to cite any legal or factual authority in support of his argument for this claim. *See* Resp. 5–9. The court has independently reviewed the plan documents cited in the Local Rule 56.1 fact statements and responses and has found no basis for disturbing the plan administrators' benefits eligibility determination. *See* RSOF ¶¶ 13–26.

### B. Breach of Fiduciary Duty and Request for Equitable Remedies: Governing Law

Komaniecki argues that the summary judgment evidence, viewed in the light most favorable to him, gives "rise to inferences that he was not adequately informed both prior to and

13

during the time he was receiving disability benefits from ITW that Defendant considered him ineligible to receive a pension." Resp. 3. Relying on *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), he argues that fact issues exist material to whether he is entitled to the equitable remedies of surcharge and reformation of the plan. *See id.* at 6–9.

Section 502(a)(3) of ERISA permits "a participant, beneficiary, or fiduciary" to bring suit "(A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief." 29 U.S.C. § 1132(a)(3). Komaniecki premises his request for equitable relief on his claim that the plan administrator breached its fiduciary duties. *See* Resp. 6–9. ERISA imposes fiduciary duties upon plan administrators. *See* 29 U.S.C. § 1104(a). Among other things,

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries . . . in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III.

§ 1104(a)(1)(A), (D) (some internal numbering omitted).

"If a fiduciary breaches his duty, he can be personally liable to the plan for any losses to the plan resulting from his breach, [and] can be 'subject to such other equitable or remedial relief as the court may deem appropriate.'" *Jenkins v. Yager*, 444 F.3d 916, 924 (7th Cir. 2006) (quoting 29 U.S.C. § 1109(a)). Komaniecki's claim for breach of fiduciary duty under ERISA has three elements: "(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) (quoting *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010); citation omitted). "An ERISA plan fiduciary does not breach its fiduciary duties under ERISA by merely providing negligent misinformation about the contours of a Plan." *Kannapien v. Quaker Oats Co.,* 507 F.3d 629, 639 (7th Cir. 2007) (citing *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 642 (7th Cir. 2004); other citation omitted).

### C. 2004 Statements by ITW Human Resources Employee and Statements on ITW's Website

Komaniecki aggregates all of the alleged statements and omissions made, whether they were made by ITW employees or plan representatives. *See* Resp. 5–9. Seventh Circuit law requires alleged misleading statements and omissions to be parsed to determine whether they are attributable to a plan fiduciary. *See Kenseth*, 610 F.3d at 465 (collecting cases); *Kannapien*, 507 F.3d at 639–40.

Section 301(21) of ERISA provides that a person qualifies as a plan fiduciary

> to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

The Seventh Circuit applied this definition to uphold the dismissal of an ERISA breach of fiduciary duty claim in *Kannapien v. Quaker Oats Co.*, 507 F.3d 629 (7th Cir. 2007). The plaintiffs in *Kannapien* retired from their jobs and took a voluntary severance package offered by their employer. *See id*. at 632–33. Among other things, the plaintiffs produced evidence at summary judgment of allegedly misleading statements made by their employer before they decided to retire. *See id*. at 634. Specifically, Tom Winters, a plant manager, told one of the plaintiffs that "she would be very pleased by the amount she would receive" if she contacted Jeffrey Satterlee, a human resources manager, about retirement, though Winters had no specific knowledge of her benefits. *Id.* (quotation omitted). Both plaintiffs met with Satterlee before deciding to retire. *Id*. Each plaintiff alleged that Satterlee provided them with misleading information about their eligibility for retirement benefits when they met with him. *See id*. At their depositions, each plaintiff "admitted . . . that Satterlee made an honest mistake in misstating the pertinent dates to them, and that they relied heavily on this mistake in deciding to retire" after their meetings with Satterlee. *Id.*

15

The Seventh Circuit held that neither Satterlee nor Winters was "a plan fiduciary under § 3(21)(A) of ERISA," despite the fact that Winters and Satterlee served respectively as a manager and human resources manager of plaintiffs' employer (as contrasted with the plan). *See id*. at 639–40. The court explained that "nothing in the record suggest[ed] that either [Winters or Satterlee] had any managerial, investment, or discretionary role in the Quaker Retirement Plan. The only cognizable fiduciaries from the record are members of the . . . Administration Committee and Employee Administration Center that served as Plan administrators." *Id*. at 639–40 (paragraph break omitted). The Seventh Circuit also held that Winters and Satterlee's statements could not be attributed to plan fiduciaries because "there is no precedent for this approach." *Id*. at 640. "Finding that Plan administrators may breach a fiduciary duty vicariously through the actions of a non-fiduciary would," the Seventh Circuit reasoned, "vitiate our requirement that an ERISA claim for breach of a fiduciary duty must be asserted against plan fiduciaries." *Id*. (citations omitted). The Seventh Circuit therefore affirmed the dismissal of the plaintiffs' breach of fiduciary duty claims. *Id*. at 639–40.

Here, as in *Kannapien*, the record contains no evidence showing that the ITW human resources employee who told Komaniecki in 2004 that he was eligible for retirement benefits had any authority concerning the plan, its management, or its administration, as is required to make the employee a plan fiduciary. *See* 29 U.S.C 1002(21). Komaniecki also points to statements on ITW's employee website dating to 2010. *See* RSOF ¶ 7; RSAF ¶¶ 6–7; Komaniecki Aff. ¶¶ 2–3. He avers that he was misled about his eligibility by the website's statement listing his annual salary as one dollar and the websites inclusion of a link to the 2010 SPD indicating that a three-year vesting period applied. *See* RSAF ¶¶ 6–7; RSOF ¶ 41; Komaniecki Aff. ¶¶ 2–3. However, Komaniecki cites no evidence tending to show a plan fiduciary, rather than an ITW employee, was responsible for, or knew about, the contents of ITW's employee website. *See* RSAF ¶¶ 6–7; RSOF ¶ 41; Pl.'s Ans. Interrogs. 1, 5, Pl.'s Stmt. Add'l Facts Ex. B, ECF No. 41-2; Screenshot of Website, RSAF Ex. B, ECF No. 49-2. The plan's fiduciaries "cannot be held liable on the basis of respondeat superior" for the conduct of ITW employees. *Kenseth*, 610 F.3d at 465.

16

Accordingly, none of the foregoing statements support Komaniecki's breach of fiduciary duty claim because nothing in the record supports a finding that a plan fiduciary made or knew about them. *See Kannapien*, 507 F.3d at 639–40.

### D. 2019 Communications with the Plan

The only communications or omissions attributable to a plan fiduciary in this record begin with Komaniecki's request to the plan administrator for plan documents on August 19, 2019. *See* RSAF ¶ 8. In response to his inquiry, the plan sent Komaniecki the incorrect plan documents—a 2016 plan document stating the vesting period was three years. RSOF ¶ 35.

> Once an ERISA beneficiary has requested information from an ERISA fiduciary who is aware of the beneficiary's status and situation, the fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance, *even if that requires conveying information about which the beneficiary did not specifically inquire*.

*Killian v. Concert Health Plan*, 742 F.3d 651, 665 (7th Cir. 2013) (en banc) (emphasis in original) (quoting *Kenseth*, 610 F.3d at 466).

In addition, a fiduciary may not provide misinformation in response to a participant's query. *Kenseth*, 610 F.3d at 468 (citing *Eddy v. Colonial Life Ins. Co. of Am.*, 919 F.2d 747, 751 (D.C. Cir. 1990)). The court need not determine whether a breach occurred here because there is no genuine dispute on the harm element.

"The core inquiry for a breach of fiduciary duty claim is whether the fiduciary's conduct harmed the plaintiff, which most commonly emerges as reductions in the assets." *Dean v. Nat'l Prod. Workers Union Severance Tr. Plan*, 46 F.4th 535, 548 (7th Cir. 2022), *reh'g denied*, 2022 WL 4126291 (7th Cir. Sept. 9, 2022) (citing *Allen*, 835 F.3d at 678). To survive summary judgment, Komaniecki must come forward with evidence sufficient to create a genuine dispute as to whether he was harmed as a result of being sent the wrong plan document in 2019. *See Killian*, 742 F.3d at 659; *Kenseth*, 610 F.3d at 464 (citing *Kannapien*, 507 F.3d at 639). This standard does not necessarily require detrimental reliance to obtain the equitable remedies of surcharge and reformation (the remedies Komaniecki seeks here), but Komaniecki must demonstrate "actual harm" which "may sometimes consist of detrimental reliance, but it might

17

also come from the loss of a right protected by ERISA or its trust-law antecedents." *CIGNA Corp.*, 563 U.S. at 444.

After he received the 2016 plan document, Komaniecki replied by letter dated September 19, 2019, stating that the plan had sent him "the current plan now in effect" and "not a copy of the plan in effect at [his] time of separation from ITW." RSOF ¶ 38 (quoting Letter from J. Komaniecki to ITW Pension Plan Administrator 1 (Sept. 19, 2019), A.R. 120). The plan replied by sending the correct 2001 plan document on October 28, 2019. RSOF ¶ 39. Komaniecki therefore did not rely on the 2016 plan document. Furthermore, it is undisputed that, to take advantage of the three-year vesting period in in the 2010 SPD and 2016 plan, Komaniecki needed to be an "eligible employee" on December 31, 2006. *See* RSOF ¶¶ 37, 43–44. It is also undisputed that Komaniecki was not an eligible employee on December 31, 2006. *See* RSOF ¶ 21. So when Komaniecki received the incorrect plan document in 2019, it was too late for him to do anything to become eligible for a three-year vesting period, regardless of whether he relied on the 2016 plan document.

Komaniecki's only other avenue for becoming eligible for benefits was to obtain five years of vesting service credit under the 2001 plan. RSOF ¶ 23. To show harm from his receipt of the 2016 plan document, Komaniecki cites his deposition testimony and interrogatory answers for the following proposition: "Had Plaintiff been made aware at the time he became disabled [in 2004] that he had insufficient vesting service credit to qualify for a pension, he would have continued working to achieve the additional vesting service credit (less than one year) necessary to fulfill the vesting requirement." RSAF ¶ 10 (citing Pl.'s Ans. to Interrog. No. 4 and Komaniecki Dep. 17:18–18:24). The cited portion of Komaniecki's deposition is not in the record. Accepting Komaniecki's interrogatory answer as true, it shows that Komaniecki was harmed by what an ITW employee told him in 2004. *See* Pl.'s Ans. to Interrog. No. 4. But for reasons explained above, what this employee told him does not bind the plan. Nor has Komaniecki suggested anything he would have done differently to make him eligible for benefits once the plan sent him the correct document in September 2019. *See* RSAF ¶ 10. Accordingly,

Komaniecki has not come forward with sufficient evidence to survive summary judgment on the harm element of his breach of fiduciary duty claim. *See Killian*, 742 F.3d at 659, 669–70; *see also Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 474 (7th Cir. 1997).

## IV. Conclusion

For the reasons stated, Defendant's motion for summary judgment is granted.

Dated: September 22, 2023  /s/ Joan B. Gottschall
United States District Judge